# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 9, 2003 Session

## WELLMONT HEALTH SYSTEM v. TENNESSEE HEALTH FACILITIES COMMISSION, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 02-1220-II    Carol L. McCoy, Chancellor

### No. M2002-03074-COA-R3-CV - Filed January 29, 2004

Administrative Law Judge vacated Certificate of Need, which had been granted by Tennessee Health Facilities Commission, on grounds of conflict of interest of a Commission member and erroneous information set forth in application for Certificate of Need. Chancery Court affirmed. We affirm, holding that the vote of a Commission member with a conflict of interest is void *ab initio*. Commission member with conflict of interest had an affirmative duty pursuant to Rules of Tennessee Health Facilities Commission 0720-1-.02(1) to not only disclose the conflict but to recuse himself. Adverse party's failure to raise the conflict was not a waiver for there can be no waiver of the public's interest in having all votes of the Commission take place without members who have a conflict.

**Tenn. R. App. P. 3; Appeal as of right; Judgment of the Chancery Court Affirmed, Modified and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ, joined.

Gary C. Shockley and Brigid M. Carpenter, Nashville, Tennessee, for the appellant, Wellmont Health System.

G. Brian Jackson, David L. Johnson, and Gayle Malone, Jr., Nashville, Tennessee, for the appellee, Mountain States Health Alliance.

Reid A. Brogden and Sue Ann Sheldon, Nashville, Tennessee, for the appellee, Tennessee Health Facilities Commission.

## OPINION

This appeal hinges on two key issues: whether Tennessee Health Facilities Commission members who have a conflict of interest in the matters at issue have an affirmative duty to recuse

themselves in proceedings before the Commission, and whether a conflict of interest is waived when no party to the proceedings raises an objection before the Commission to the alleged conflict of one of its members.[1]

### Facts and Procedural History

The appellant, Wellmont Health System (Wellmont), is a not-for-profit hospital system which owns and operates five hospitals and related facilities. These facilities are located in Northeast Tennessee and Southwest Virginia. Appellee, Mountain States Health Alliance (Mountain States), is also a not-for-profit hospital system that owns and operates six hospitals in the same region.

On July 13, 2000 Wellmont applied for a Certificate of Need to build and operate a for-profit hospital in Johnson City, Washington County, Tennessee. The proposed facility would be an acute care facility providing emergency care, obstetrics, inpatient and outpatient surgery, intensive care, mobile magnetic resonance imaging, and cardiac catheterization. In its application, Wellmont asserted that additional hospital capacity is needed in Washington County based on reports showing emergency room waits, delays in scheduling surgical and diagnostic procedures and the unavailability of hospital beds.

The application process required that Wellmont project future hospital bed needs in Washington County along with other factors. Mountain States contends that the "very heart of Wellmont's application" is the claim that 527 beds would be needed in Washington County by 2004 and that this statement is false and misleading along with other claims in the application.[2] The discrepancies were acknowledged in the testimony of Wellmont's corporate representative who acknowledged that the following corrections needed to be made to the projections for 2004: 24,503 hospital admissions as opposed to the incorrect figure of 32,095; 102,913 hospital patient days as opposed to 134,799; 7,204 observation days as opposed to 9,436; 402 hospital beds as opposed to 527; and that instead of a 106 bed shortage, there would be a surplus of beds. Mountain States also asserts that Wellmont understated the number of licensed beds as 421, when the correct number was 564 and that Wellmont's asserted need of 106 additional hospital beds was based on false and misleading information. Mountain States asserts that such erroneous information was the basis for the Commission's determination that additional beds were needed, and thus the reason the Commission approved Wellmont's Certificate of Need.

---

[1]Additional issues are presented and are set forth later in the opinion but the two set forth above control the outcome of this appeal.

[2]Wellmont acknowledged the error explaining that its consultant transposed two numbers which reported the admissions from neighboring Sullivan County to Washington County such that 8,186 was reported as the number of admissions instead of 1,816 which was the correct number of admissions. Consequently, total Washington County admissions were overstated for 1998 and projected admissions in future years were also "infected" with the error in the Certificate of Need application.

On October 25, 2000 the Commission held its hearing on Wellmont's application for the Certificate of Need. Physicians and lay persons testified. During this meeting and before the Commission's vote, the mathematical error in Wellmont's application was disclosed. Mountain States characterized Wellmont's error as "a huge mistake." Wellmont acknowledged that it had made a mistake but countered arguing that some of the beds were "paper beds" which were not available for patients. Wellmont's counsel further argued that licensed but unused beds at North Side Hospital, owned by Mountain States, should not be considered. Mountain States countered, arguing that licensed beds at North Side must be counted. Wellmont rebutted Mountain States' argument showing that Mountain States had submitted a Certificate of Need application in January 2000 which indicated a need for 497 beds, a figure which Wellmont asserts is close to its figure even with the error.

After taking evidence and hearing arguments of counsel, the Commission voted granting Wellmont's application for the Certificate of Need. Of the ten members participating, five commission members voted to approve Wellmont's Certificate of Need and four voted to deny the Certificate of Need. The chairperson abstained. Commissioner Charles Mann, who is alleged to have a conflict of interest, voted with the majority in favor of granting the Certificate of Need.

On November 21, 2000 Mountain States initiated a contested case proceeding by its appeal pursuant to Tenn. Code Ann. § 68-11-109(a) charging that the information contained in Wellmont's application is "misleading, inaccurate and incomplete," that the new hospital is contrary to the "goals, objectives, criteria and standards" of the State Health Plan, and that Wellmont's new hospital is unnecessary, not feasible and "will not lead to the orderly development of health care." Absent from the petition, Wellmont asserts, is an allegation of a conflict of interest by Mann under Commission Rule 0720-1-.02, any procedural irregularity as to the proceedings before the Commission, or any error which formed the basis for the Commission to issue the Certificate of Need to Wellmont.

On March 13, 2001, Mountain States filed a Motion for Stay in the proceedings before the Administrative Law Judge in which it alleged a conflict of interest by Mann under Rule 0720-1-.02. Mountain States sought the stay so that it could conduct discovery as to whether Mann had a conflict of interest that would have precluded him from participating in the proceedings and vote before the Commission. On April 24, 2001, Administrative Law Judge Ralph Christian denied the Motion for Stay on the basis that his review of the matter was *de novo* pursuant to Tenn. Code Ann. § 68-11-109.[3]

---

[3]Following the adverse ruling by Administrative Law Judge Ralph Christian denying the Motion for Stay on the basis his review was *de novo* pursuant to Tenn. Code Ann. § 68-11-109, Mountain States petitioned the Davidson County Chancery Court to review the Administrative Judge's refusal of the stay of proceedings under the UAPA and the Administrative Law Judge's refusal to decide whether the Commission had lawfully acted to approve Wellmont's Certificate of Need application. Alternatively, Mountain States also requested a writ of certiorari and a ruling that the Certificate of Need was null and void because of Mann's participation in the proceeding. Further, Mountain States sought a writ of supersedeas under Tenn. Code Ann. § 27-9-106 to stay further proceedings by the THFC until the
(continued...)

Mountain States also filed a motion for summary judgment requesting that the Certificate of Need issued to Wellmont be vacated because the application contained information that was false, misleading and erroneous and the Certificate of Need was null and void because of Commissioner Mann's participation in the proceedings despite his conflict of interest. Mountain States argued that Commissioner Mann's conflict of interest was critical to the outcome of the hearing for he participated in the discussion, he made the motion to approve Wellmont's Certificate of Need and he cast what became the deciding vote to approve the Certificate of Need.

Mountain States presented evidence which established that Commissioner Mann is the principal owner, officer and director of Specialty Surgical Instruments (SSI) and that SSI sells surgical instruments to hospitals and other health care providers in Tennessee. More specific to this case, Mountain States presented evidence that SSI sold approximately $465,000 to Wellmont from fiscal year 1997 through June 6, 2001, and alleged that Mann would likely sell even more equipment to Wellmont if another hospital were opened. Mountain States also introduced evidence showing that SSI sold $158,000 to Mountain States in the year 2000, bringing the total sales by SSI to more than one-half million dollars for the period.

The Administrative Law Judge granted Mountain States' motion for summary judgment on both grounds and vacated the Certificate of Need that had been granted to Wellmont. Though she found that both grounds were valid to support a grant of summary judgment, Judge Morgan held that the conflict of interest issue is "entirely dispositive of the issue of whether summary judgment should be granted."

Wellmont filed a petition in the Davidson County Chancery Court seeking judicial review of the Administrative Law Judge's ruling asserting that the Administrative Law Judge erred in finding that Mann had an improper conflict of interest, that Mountain States waived the right to assert the conflict of interest, and that the Administrative Law Judge erred in finding that the Commission based its vote on false, inaccurate and misleading information in Wellmont's application. The Chancellor affirmed the Administrative Law Judge's ruling, finding that Mann had a conflict of interest and was under an affirmative duty to disclose the conflict and recuse himself from the proceedings resulting in the vote being void *ab initio*. The Chancellor also vacated that portion of the prior ruling in which the Chancellor had held that Mountain States had waived the

---

[3](...continued)
Chancery Court could review the matter which was opposed by the Commission and Wellmont.

On June 11, 2001, the Chancery Court denied the motion for a stay on grounds that the Chancery Court did not have subject matter jurisdiction and that even if the court did have jurisdiction, Mountain States had "waived its right to challenge participation by Commissioner Mann in the proceeding of October 25, 2000, by its failure to raise that issue at an appropriate time." *Mountain States Health Alliance v. Tennessee Health Facilities Commission, et al.* No. 01-1475-III(II) (Davidson County Chancery Court June 5, 2001). Mountain States appealed the Chancellor's ruling to this Court, but while the appeal was pending the Administrative Law Judge granted summary judgment in favor of Mountain States and this Court dismissed the appeal as moot because of the Administrative Law Judge's ruling.

conflict of interest by not raising it in earlier administrative proceedings. The Chancellor also affirmed the Administrative Law Judge's ruling that the Certificate of Need was based on "false, incorrect, or misleading" information and should be vacated.

## Standard of Review

Under the Tennessee Uniform Administrative Procedures Act (UAPA), the reviewing court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)     In violation of constitutional or statutory provisions;
(2)     In excess of statutory authority of the agency;
(3)     Made upon unlawful procedure;
(4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)     Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

Judicial review of an agency's action follows the narrow, statutorily defined standard contained in Tenn. Code Ann. 4-5-322(h) rather than the broad standard of review used in other civil appeals. *Wayne County v. Tennessee Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 279 -280 (Tenn. Ct. App. 1988) (citing *CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980)); *Metropolitan Gov't of Nashville v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977); *DePriest v. Puett*, 669 S.W.2d 669, 673 (Tenn. Ct. App. 1985), cert. denied, 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed. 2d 397 reh. denied, 469 U.S. 1181, 105 S.Ct. 942, 83 L.Ed.2d 954 (1985).

The scope of review by this court is the same as the trial court; review the findings of fact by an administrative agency upon the standard of substantial and material evidence. *Gluck v. Civil Serv. Comm'n*, 15 S.W. 3d 486, 490 (Tenn. Ct. App. 1999) (citing *De Priest v. Puett*, 669 S.W.2d 669 (Tenn. Ct. App. 1984)). What amounts to "substantial and material" evidence under Tenn. Code Ann. § 4-5-322(h) is understood to require "something less than a preponderance of the evidence, (citations omitted) but more than a scintilla or glimmer." *Gluck* at 490 (citing *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W. 2d 274, 280 (Tenn. Ct. App. 1988)).

While this court may consider evidence in the record that detracts from its weight, the court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. *Gluck* at 490 (citing Tenn. Code Ann. § 4-5-322(h); *Pace v. Garbage Disposal Dist.*, 390 S.W.2d

461, 463 (Tenn. Ct. App. 1965). The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *Gluck* at 490 (citing *Pace* at 463).

Conclusions of law are subject to *de novo* review on appeal without any presumption of correctness. *Niziol v. Lockheed Martin Energy Sys., Inc.*, 8 S.W.3d 622, 624 (Tenn.1999); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn.1998). Issues of statutory construction are solely questions of law. *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn. 2000); *Hardin v. Royal & Sunalliance Ins.*, 104 S.W.3d 501, 503 (Tenn. 2003).

<u>Analysis</u>

Wellmont asserts that Mountain States' failure to raise the issue of whether Commissioner Mann had a conflict of interest constitutes a waiver of the right to raise the conflict on appeal. Raising the conflict at this late date is described by Wellmont as an "ace in the hole strategy"– that is, a conflict ignored by Mountain States when Mountain States thought Commissioner Mann may vote against Wellmont's Certificate of Need application, but raised once the vote did not go in Mountain States' favor.

Conversely, Mountain States argues that under the Commission's Rule 0720-1-.02(1), a party's waiver of the conflict of interest is immaterial because the Commission member has an affirmative duty to disclose the conflict <u>and</u> to recuse himself/herself. Further, Mountain States argues that the administrative agency's position on this rule is, in essence, one of zero tolerance and that "courts must give great deference and weight to an agency's interpretation of its own rules" quoting *Quaker Oats Co. v. Jackson*, 745 S.W. 2d 269, 272 (Tenn. 1988); *Profill Dev., Inc. v. Dills*, 960 S.W. 2d 17, 27 (Tenn. Ct. App. 1997).

This issue was addressed recently in *Methodist Healthcare-Jackson Hospital v. Jackson-Madison County General Hospital District, et al.*, No. M2002-01655-COA-R3-CV, 2003 WL 21202577 (Tenn. Ct. App. May 22, 2003) (Application for Permission to Appeal Denied by Supreme Court, Oct. 27, 2003).[4] *Methodist Healthcare* also involved a similar alleged conflict of Commissioner Charles Mann. The rule at issue, Commission Rule 0720-1-.02(1), provides:

CONFLICTS OF INTEREST

(1)  Members. If any matter before the Commission involves any project, transaction, or relationship in which a member or their associated institution or business has a direct or a conflicting interest, *the member shall make known*

---

[4]This case was initially captioned Methodist Healthcare-Jackson Hospital v. Jackson -Madison County General Hospital District. The name of the plaintiff has been changed to Jackson Tennessee Hospital Co., LLC. because Methodist Healthcare-Jackson Hospital was acquired by Jackson Tennessee Hospital Co., LLC. We will refer to this case by its original caption for the prior opinion is filed under the original caption.

> *to the Commission that interest and recuse himself/herself from the deliberation and vote*, and join the general public during the proceedings.

(emphasis added)

In its application of Commission Rule 0720-1-.02(1), the *Methodist Healthcare* court stated:

> To reiterate, Commission Rule 0720-1-.02(1) provides that a Commission member with a defined conflict of interest "*shall* make known to the Commission that interest and recuse himself/herself from the deliberation and vote, and join the general public during the proceedings." (emphasis added). By the plain and mandatory language of Commission Rule 0720-1-.02(1), it is evident that Commissioner Mann had an affirmative duty to inform the Commission of his conflict of interest and recuse himself from the deliberation and vote on Methodist's application.

*Id.* at *13.

Applying Commission Rule 0720-1-.02(1), the *Methodist Healthcare* court found that Commissioner Mann "had an affirmative duty to inform the Commission of his conflict of interest and thereby recuse himself from the vote and proceedings" and that "Jackson-Madison's failure to petition the Commission for recusal did not constitute a waiver."[5] *Id.* at *14. Ironically, the court's

---

[5]Unlike the argument in this case, Methodist Healthcare-Jackson Hospital had argued that Tenn. Code. Ann. § 4-5-302 (the UAPA), not Commission Rule 0720-1-.02(1), controlled the determination of whether Charles Mann had an affirmative duty to raise the conflict and recuse himself or whether the hospital which opposed the issuance of the Certificate of Need was required to raise the conflict. While acknowledging that the statute and the Commission Rule both provided a means for disqualifying a Commission member, the Court found that the two were not inconsistent and that the Commission Rule was controlling under the circumstances of that case which, as stated above, are very similar to the facts in this case. The Court's analysis in Methodist of the contrast between the statute and Commission Rule and its application is helpful here:

> T.C.A. § 4-5-302 provides only that an aggrieved party "may" petition for disqualification of a Commission member upon knowledge of the existing or alleged conflict. Unlike Commission Rule 0720-1-.02(1), T.C.A. § 4-5-302 does not mandate action on behalf of the aggrieved party through inclusion of the term "shall." Commission Rule 0720-1-.02(1) does not conflict with this statute, but rather simply goes one step further in placing the affirmative burden on the Commission member possessing the alleged or potential conflict of interest to reveal said conflict to the administrative agency and to recuse himself from the vote and proceedings. We find no conflict with T.C.A. § 4-5-302, as this statute mandates disqualification of any Commission member with a conflict of interest similar in magnitude to the conflict involved in this case. Both the statute and the rule require disqualification based on conflict of interest, Commission Rule 0720-1-.02(1) simply places the mandatory duty of disclosure and recusal on the Commission member--the party best suited to realize whether such conflict exists.

*Methodist Healthcare-Jackson Hospital v. Jackson-Madison County General Hospital District, et al.*, No. M2002-01655-COA-R3-CV, 2003 WL 21202577 (Tenn. Ct. App. May 22, 2003) at *13.

conclusion was supported by the Order of the Administrative Law Judge in this case.[6] Pertinent portions of the Order that supported the foregoing conclusion in *Methodist Healthcare* are as follows:

> Because a party that appears before the Commission may not be aware of a Commissioner's conflict of interest at the time of a vote that impacts that party's rights or pecuniary interests, this rule is self-executing in the contest [sic] of a conflict of interest, placing upon each Commissioner an affirmative duty, *regardless of whether any party to the proceeding requests it*, to disclose at the beginning of the hearing a direct interest or conflict of interest[7] in the matter, and recuse himself/herself from further involvement in the Commission's hearing on the matter, the Commission's deliberation on the CON and the Commission's vote on the CON.
>
> Because recusal in the context of a conflict of interest is an affirmative duty of the Commission member himself/herself, and because all Commissioners who serve on the Tennessee Health Facilities Commission serve to advance the public policy clearly stated in T.C.A. § 68-11-103, the failure of any party to the proceeding to "object" to a Commissioner's participation in the vote, prior to the vote, is immaterial. *There can be no "waiver" of the public's interest in having all votes of the Commission take place without any member participating who has a conflict of interest in the outcome of the vote.*

*Id.* at \*14. (emphasis added)

Based on Commission Rule 0720-1-.02(1) and the conclusion reached in *Methodist Healthcare*, we too hold that there can be no "waiver" of the public's interest concerning this issue; therefore, Mountain States' failure to petition the Commission for recusal did not constitute a waiver of the conflict of interest at issue.

The next issue raised by Wellmont reads, "Did the Chancellor err in affirming the Administrative Law Judge when Mountain States failed to show the existence of any conflict of interest on the part of any THFC Commissioner?"

The Administrative Law Judge found that Commissioner Mann had a conflict of interest. Our review of that determination is narrower than in other civil appeals. When reviewing an agency's factual determinations, unlike other civil appeals, courts should be less confident that their judgment is preferable to that of the agency. *Wayne County v. Tennessee Solid Waste Disposal Control Bd.* 756 S.W.2d 274, 279-280 (Tenn. Ct. App. 1988), *see also* 2 C. Koch, Administrative Law and Practice

---

[6] The *Methodist Healthcare* court quoted at length from the Order rendered by Administrative Law Judge Blair Scoville Morgan in this case. Relevant portions of that Order, as quoted in *Methodist Healthcare,* are set forth in this opinion.

[7] The Order is slightly misquoted in the opinion, it should read: "direct interest or a conflicting interest"

§ 9.4 (1985). Courts do not review the fact issues *de novo* and, therefore, do not substitute their judgment for that of the agency as to the weight of the evidence, *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn.1977); *Grubb v. Tennessee Civil Serv. Comm'n*, 731 S.W.2d 919, 922 (Tenn.Ct.App.1987), even when the evidence could support a different result. *Hughes v. Board of Comm'rs*, 204 Tenn. 298, 305, 319 S.W.2d 481, 484 (1958).

Wellmont contends that the record does not establish that SSI and Commissioner Mann would enjoy an increase in its future sales to Wellmont if a new hospital was built. Wellmont argues that it was error for the Administrative Law Judge to infer that more sales would result and for the Chancellor to likewise support such an inference. Such a finding, Wellmont contends, is not supported by the evidence, making summary judgment improper.

Wellmont's argument misses the point. If a disqualifying conflict of interest exists, it is not necessary to prove a future benefit to the commissioner. The presumption that such a conflict of interest may influence a decision is the basis for rules requiring recusal when a commissioner has a disqualifying conflict of interest.

The record is clear that Commissioner Mann and/or SSI had a substantial relationship with Wellmont during the four years leading up to the vote. Specifically, the record shows that SSI had sales to Wellmont of approximately $456,810 from 1997 through June of 2001. The appellate court in *Methodist Healthcare* affirmed the Administrative Law Judge's finding that Mann had a "disqualifying pecuniary conflict of interest" based on sales to Methodist of approximately $405,093, which occurred prior to the vote. *Methodist* at * 12. The facts before us are not dissimilar to the facts in *Methodist Healthcare.* Accordingly, we affirm the finding that Commissioner Mann had a conflict of interest that disqualified him from participating and voting on Wellmont's application for a Certificate of Need.

As a consequence of the foregoing ruling, we must now determine whether the participation of Commissioner Mann voids only Commissioner Mann's vote or the votes of all of the commissioners and therefore the decision of the Commission. The conclusion of law set forth in the Order of the Administrative Law Judge Granting Summary Judgment that is pertinent to this issue reads:

> 8. The parties to this case are in agreement that Commissioner Mann cast the tie-breaking vote that resulted in Wellmont's [sic] being granted the requested CON. Because Commissioner Mann failed in his affirmative duty to recuse himself from the vote *because* of his conflict of interest, and *his vote broke the tie* in the Commission's deliberations, [sic] resulting in the granting of the CON to Wellmont, *the entire vote of the Commission is tainted and is void ab initio.* Therefore, the CON granted to Wellmont by the Commission, as such was the result of a tainted vote in violation of the Commission's own conflict of interest rule, as well as the stated public policy of the Act, should be vacated. (emphasis added)

The foregoing conclusion of law clearly states that the Administrative Law Judge held that the Certificate of Need was vacated. What is not clear is why, whether it was vacated because "his (Mann's) vote broke the tie" or because Commissioner Mann participated. In the Chancellor's Memorandum and Order she stated that the conflict of interest issue "provided a reasonably sound basis for the ALJ's holding that the Wellmont CON was void *ab initio* due to a conflict of interest." Moreover, the Chancellor upheld the decision of the Administrative Law Judge that Commissioner Mann violated his duty to disclose his conflict of interest and recuse himself from deliberating and voting on Wellmont's application, and vacated the Wellmont Certificate of Need. However, the Chancellor did not state whether she affirmed and vacated the Certificate of Need because "his vote broke the tie" or because Commissioner Mann participated.

Conclusions of law are subject to our *de novo* review on appeal without any presumption of correctness. *Niziol v. Lockheed Martin Energy Sys., Inc.*, 8 S.W.3d 622, 624 (Tenn.1999); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn.1998). Therefore, we review the Chancellor's conclusion of law with no presumption of correctness or error. We begin our analysis of this issue with the opinion in *Methodist Healthcare* in which this court held that "Mann's *participation* in the initial September 1998 vote approving Methodist's CON application caused the vote [sic] be *tainted* in violation of the Commission's own conflict of interest rule, and therefore declare[d] *said vote* void *ab initio*." *Id*. at *14. (emphasis added) It is unclear whether the phrase "said vote" as used in *Methodist Healthcare* refers to only Commissioner Mann's vote or the vote of the commission. We readily agree that Commissioner Mann's vote is void *ab initio,* but should the votes of the other Commissioners be deemed void.

Commissioner Mann indeed participated but did his participation, exclusive of his vote "taint", or stated another way, affect the outcome of the decision in favor of Wellmont. Without Mann's vote, Wellmont's application did not receive a majority vote of the members present and voting. Therefore, pursuant to the statute then in effect, the application of Wellmont was disapproved. Tenn. Code Ann. § 68-11-108(f).[8] If Commissioner Mann's mere participation, in the absence of proof that his participation affected the outcome of the proceedings, voids the vote of all Commissioners, and thereby the decision of the Commission, we may be required to not only vacate this decision, and remand it to the Commission for a new hearing, but other Commission decisions when a commissioner with a conflict participates. Such may be the case even if the vote were eight to one, with only the conflicted commissioner voting in opposition to the majority. We do not believe this is the intent of the Commission Rule. To the contrary, we are of the opinion that the "participation" contemplated in the Commission Rule requires an effect on the outcome of the Commission's decision. This conclusion is supported by the Commission Rule which does not require the Commissioner to vacate the hearing room, only to "join the general public during the proceedings." Commission Rule 0720-1-.02(1). Accordingly, we hold that in the absence of proof that the "participation" of the commissioner with the conflict, separate and apart from his/her vote, affected the outcome of the commission's decision, only the vote of the commissioner with the

_____

[8]The statute was in effect when the Commission voted; however, it was repealed effective July 1, 2002.

-10-

conflict shall be void *ab initio.* Therefore, we hold that the vote of Commissioner Mann is void *ab initio* and that the votes of the other commissioners are valid.

Having made that determination, we must now determine whether to remand this matter to the Commission for further proceedings or whether the decision of the commission concerning Wellmont's application for a Certificate of Need is final. The initial vote was five in favor of granting the Certificate of Need and four in opposition. Having found that Commissioner Mann's vote is void *ab initio*, the vote is four to four which constitutes a tie vote. For an application to be approved it must receive a majority of those commissioners present and voting. A tie vote is considered a denial of the application.[9] Accordingly, the decision of the Commission constituted a denial of Wellmont's application for a Certificate of Need. Tenn. Code Ann. § 68-11-108(e) provides that the "commission's decision to approve or deny an application shall be final and shall not be reconsidered." The Chairperson abstained. Having abstained, the Chairperson cannot now vote to break the tie for such would violate the statute which provides that a commission's decision to approve or deny an application shall be final and shall not be reconsidered. *See Methodist Healthcare-Jackson Hosp. v. Jackson-Madison County General Hosp. Dist.*, 2003 WL 21202577, *8-9 (Tenn. Ct. App. 2003) (holding that the statute does not distinguish between a vote and a decision), citing Tenn. Code Ann. § 68-11-108(e). Accordingly, we find that the decision of the Commission denying Wellmont's application for a Certificate of Need is final and the matter cannot be remanded to the Commission for the purpose of conducting another hearing on Wellmont's application. Therefore, we too vacate the Certificate of Need granted to Wellmont for the reasons set forth above.

The third and final issue presented by Wellmont reads, "Did the Chancellor err in affirming the Administrative Law Judge when the inadvertent mathematical errors in Wellmont's Certificate of Need application were fully disclosed to the THFC prior to its vote to grant the Certificate of Need?"

We have found that Commissioner Mann's vote was void *ab initio* and the application of Wellmont for a Certificate of Need was denied by a decision of the Commission. Moreover, we found that the decision by the Commission denying Wellmont's application is final and the decision of the Commission cannot be reconsidered. Accordingly, we find the issue pertaining to the alleged mathematical errors set forth in the application of Wellmont is pretermitted as being moot.

## In Conclusion

Based upon the foregoing, we hold that (1) Commissioner Mann had an affirmative duty to inform the Commission of his conflict of interest and to recuse himself; (2) that Mountain States' failure to petition the Commission for recusal did not constitute a waiver; (3) that Commissioner

---

[9]Pursuant to Tenn. Code Ann. § 68-11-104(f)(4) "no action of the commission shall be effective unless such action is concurred in by a majority of its members present and voting." Pursuant to Tenn. Code Ann. § 68-11-104(f)(5) "the action shall be considered disapproved" in the event of a tie vote. These statutes were in effect when the Commission voted; however, they were repealed effective July 1, 2002.

-11-

Mann's vote approving Wellmont's application for a Certificate of Need was void *ab initio*; (4) that the vote of the eligible commissioners voting was four to four, being a tie vote, which constitutes a decision by the Commission denying Wellmont's application for a Certificate of Need in Washington County; and (5) the decision of the Commission is final and is not subject to reconsideration by the Commission.

Accordingly, we modify and affirm the ruling of the Chancery Court for the reasons set forth above. Costs are assessed against Wellmont Health System.

_____
FRANK G. CLEMENT, JR., JUDGE